UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BELIZARIO ABRAHAM BENITO VASQUEZ,<br><br>Petitioner,<br><br>v.<br><br>ANTONE D. MONIZ, Superintendent, Plymouth County Correctional Facility; TODD LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security;<br><br>Respondents. | Civil Action No. 1:25-cv-11737-NMG |

**RESPONDENTS' OPPOSITION TO**
**PETITION FOR WRIT OF HABEAS CORPUS**

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, submit this opposition to Petitioner Belizario Abraham Benito Vasquez's Habeas Petition. Doc. No. 1. Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254.[1]

**INTRODUCTION**

This Court cannot extend the writ of habeas corpus unless an individual "is in custody in violation of the Constitution or laws or treaties of the United States". 28 U.S.C. § 2241(c)(3). Petitioner fails to carry his burden to demonstrate that his detention by U.S. Immigration and

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

Customs Enforcement ("ICE") violates the Immigration and Nationality Act ("INA"), its implementing regulations, or the Constitution, and as such, this Petition must be denied.

ICE's detention of Petitioner is authorized by statute as he is subject to an expedited removal order. Petitioner is a native and citizen of Guatemala who illegally crossed into the United States in 2024. *See* Declaration of Assistant Field Office Director, Keith Chan, ¶¶ 7-8. He was recently arrested and detained by ICE pursuant to its statutory authority that authorizes ICE to issue an expedited removal order against an individual who has not been admitted or paroled into the United States and cannot demonstrate presence in the United States for a two-year period prior to a determination of inadmissibility. 8 U.S.C. § 1225(b)(1)(A)(iii)(II). *Id.*, ¶ 13. Petitioner asserts a fear of return to Guatemala in his Petition and by statute, he is entitled to seek protection from removal after asserting such fear. *Id.* § 1225(b)(1)(A)(i). ICE, however, is statutorily required to detain Petitioner while he pursues his fear-based claim. *Id.* § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution, and if found not to have such a fear, until removal."); *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (8 U.S.C. § 1225(b) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin."). As such, Petitioner's detention is authorized by statute.

Petitioner's detention also comports with the Constitution as the Supreme Court, the U.S. Court of Appeals for the First Circuit, and this Court have held that detention of applicants for admission like Petitioner is constitutional and such aliens are entitled only to the procedural protections and process provided by statute. *See e.g., Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("*Mezei*") (Explaining that "an alien on the threshold of entry stands on

a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'") (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (Alien detained soon after illegally entering the United States "has only those rights regarding admission that Congress has provided by statute" and "the Due Process Clause provides nothing more…"); *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987) (Explaining that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress."); *Diallo v. Gillen*, No 1:25-CV-11500-JEK, ECF No. 12 (D. Mass. June 13, 2025) (Dismissing habeas petition filed by applicant for admission who failed to demonstrate detention under Section 1225(b) was "in violation of any federal statute or in violation of his Fifth Amendment due process rights."). As such, Petitioner's undeveloped Fifth Amendment claim fails as he is not entitled to release or a bail hearing.

Finally, the INA strips this Court of jurisdiction to review Petitioner's expedited removal order. *See Thuraissigiam*, 591 U.S. at 111-12 (Explaining that Congress limited the review that an alien in expedited removal may obtain via habeas corpus to three matters and that all other determinations regarding expedited removal are protected from "undue interference by the courts"). As such, the Court must dismiss his Petition

**BACKGROUND**

A. **Legal Background for Aliens Seeking Admission to the United States.**

An applicant for admission is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States [] whether or not at a designated port of arrival …." 8 U.S.C. § 1225(a)(1). As explained by the Supreme Court, "an alien who tries to enter the

country illegally is treated as an 'applicant for admission' and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry' into the United States." *Thuraissigiam*, 591 U.S. at 140.  Stated another way, an "alien who arrives at a 'port of entry,' *i.e.* a place where the alien may lawfully enter, must apply for admission.  An alien [] who is caught trying to enter at some other spot is treated the same way." *Id.* at 108.  Such applicants for admission—"even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* at 139 (quoting *Mezei*, 345 U.S. at 215).

Pursuant to 8 U.S.C. § 1225, immigration officials have discretion to place aliens arriving in the United States in either expedited removal proceedings under Section 1225(b)(1) or full removal proceedings under 8 U.S.C. § 1229a.  *Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 114 (D. Mass. 2020).  Under either approach, Section 1225 authorizes detention of such individuals "throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Jennings*, 583 U.S. at 302.

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104208, Tit. III, § 302(a), 110 Stat. 3009-579, Congress amended Section 1225(b) to add "expedited removal" procedures to "streamline[] rules and procedures . . . to make it easier to deny admission to inadmissible aliens," while ensuring that there is "no danger that an alien with a genuine asylum claim will be returned to persecution." H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 157–58 (1996) (House Report); *see also Thuraissigiam*, 591 U.S. at 109-11 (describing expedited removal process).  After IIRIRA, Section 1225(b) provides that, if an immigration officer determines that an alien "who is arriving in the United States" lacks valid documents or is inadmissible due to fraud, the officer "shall order the alien removed from the United States

4

without further hearing." 8 U.S.C. § 1225(b)(1)(A)(i). Under Section 1225(b)(1)(A)(i), ICE can also issue an expedited removal order to an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that [the] alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility". Id. § 1225(b)(1)(A)(iii)(II).

If, however, the alien expresses a fear of persecution or torture, the expedited removal order is held in abeyance and an asylum officer must determine whether the alien has a credible fear. See 8 U.S.C. §§ 1225(b)(1)(A)(ii) & (B); 8 C.F.R. §§ 208.30, 235.3(b)(4). If an asylum officer makes a positive finding of credible fear, the individual is placed into removal proceedings to pursue asylum under 8 U.S.C. § 1229a. Id. If the asylum officer makes a negative fear determination, the applicant has an opportunity to have such determination reviewed by an Immigration Judge ("IJ"). 8 U.S.C. 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42. If the IJ reverses and makes a positive credible fear determination, the IJ must vacate the expedited removal order. See 8 C.F.R. § 1208.30(g)(2)(iv)(B). At that point, ICE will commence removal proceedings before the IJ under 8 U.S.C. § 1229a. Id.

If the IJ affirms the asylum officer's negative fear determination, the case is remanded to ICE for execution of the expedited removal order, and there is no right to appeal the IJ's decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1208.30(g)(2)(iv)(A). Courts of appeals also lack jurisdiction to directly review expedited removal orders and credible fear determinations. 8 U.S.C. § 1252(a)(2)(A).

As explained by the Supreme Court, "[a]n alien subject to expedited removal thus has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the applicant has not

asserted a credible fear." *Thuraissigiam*, 591 U.S. at 110-11 ("As a practical matter, then, the great majority of asylum seekers who fall within the category subject to expedited removal do not receive expedited removal and are instead afforded the same procedural rights as other aliens.")

An individual subject to an expedited removal order, however, "is not entitled to immediate release" regardless of whether their asylum claim is reviewed fully or in an expedited manner. *Id.* at 111. *Jennings,* 583 U.S. at 302. This is because Section 1225(b)(1)(B)(iii)(IV) provides for mandatory detention of individuals during the credible fear review process and until removal from the United States. ("Any alien subject to the procedures under this clause *shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.") (emphasis added).

While an applicant for admission is not entitled to release or a bond hearing by statute or regulation, the Secretary, acting through ICE and CBP, has discretion to parole applicants for admission from custody. *See* 8 U.S.C. § 1182(d)(5).

### B. Petitioner's Immigration History.

Petitioner is a native and citizen of Guatemala. Exh. A, ¶ 7. He attempted to illegally enter the United States and was encountered by the U.S. Border Patrol on or about May 20, 2024. *Id.*, ¶ 8. He was released from Border Patrol custody and issued a Notice to Appear in removal proceedings on account of his inadmissibility to the United States. *Id.*, ¶ 9. On or about March 18, 2025, Petitioner filed a Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, with U.S. Citizen and Immigration Services ("USCIS"). *Id.*, ¶ 11. His application remains pending. *Id.* On April 4, 2025, an IJ granted Petitioner's motion to terminate removal proceedings. *Id.*, ¶ 12.

On June 12, 2025, ICE arrested Petitioner pursuant to 8 U.S.C. § 1225(b) and served him with a Form I-860, Notice and Order of Expedited Removal. *Id.*, ¶ 13. Petitioner did not claim a fear of return to Guatemala when served with the I-860. *Id.* On June 18, 2025, ICE referred Petitioner's case to USCIS' Asylum Office to schedule a Credible Fear interview after noting the fear claim raised through his Petition. *Id.*, ¶ 14. Petitioner is currently detained at Plymouth County Correctional Facility pursuant to ICE's statutory authority under 8 U.S.C. § 1225(b). *Id.*, ¶ 15.

### C. Petitioner's Habeas Petition.

Petitioner filed this Petition on June 13, 2025. Doc. No. 1. He contends his detention violates the Fifth Amendment's Due Process Clause, but does not specifically assert a basis for this contention. *Id.*, ¶¶ 18-21. He claims that he has a fear of return to Guatemala and has requested a Credible Fear interview and therefore asks this Court to order that he remain in Massachusetts "to ensure proper access to counsel." *Id.*, ¶ 21. He also asks this Court to find that his detention violates the Due Process Clause as well as 8 U.S.C. § 1101(a)(15)(T).[2] *Id.*, PRAYER FOR RELIEF.

## STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28

---

[2] Section 1101(a)(15)(T) concerns aliens who have been "victim of a severe form of trafficking in persons", but Petitioner does not contend in the body of his Petition that he is such an alien. Petitioner's unsupported claim that his detention violates this provision therefore should be denied.

U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions unless Congress had separately stripped the court of jurisdiction to hear the claim.

To warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner."); *Farrell v. Lanagan,* 166 F.2d 845, 847 (1st Cir. 1948) ("The burden of proof is on the petitioner to establish denial of his constitutional rights. The court must be convinced by a preponderance of evidence.").

## ARGUMENT

**A.     Petitioner's Detention is Lawful and therefore the Petition must be Denied.**

ICE's detention of Petitioner is authorized by statute, regulation, and comports with the Constitution.  As such, this Petition must be denied.

**1.     Petitioner's Detention is Authorized by Statute and Regulation.**

ICE's detention of Petitioner is pursuant to an expedited removal order entered under 8 U.S.C. § 1225(b)(1) and therefore his claim of unlawful arrest and detention is without merit. ICE issued Petitioner an expedited removal order because he is an alien "who has not been admitted or paroled into the United States" and because Petitioner "has not affirmatively shown, to the satisfaction of an immigration officer, that [he] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility".  8 U.S.C. § 1225(b)(1)(A)(iii)(II).  Because Petitioner is inadmissible per 8 U.S.C. § 1182(a)(7) in that he lacks proper documents to demonstrate admission to the United States, ICE upon its arrest of Petitioner on June 12, 2025, exercised its authority to "order the

alien removed from the United States without further hearing or review". *Id.* § 1225(b)(1)(A)(i). While Petitioner did not initially assert an intention to apply for asylum upon his arrest on June 12, he has since raised such fear, and ICE therefore referred his case to USCIS' Asylum Office to conduct the required Credible Fear interview. Exh. A, ¶¶ 13-14.

Per 8 U.S.C. § 1225(b)(1)(B)(IV), Petitioner "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removal." As stated by the Supreme Court, an individual issued an expedited removal "is not entitled to immediate release." *Thuraissigiam*, 591 U.S. at 111. Instead, as explained in *Jennings*, § 1225(b) "mandate[s] detention of applicants for admission until proceedings have concluded." 538 U.S. at 297. In declining to find a statutory requirement to conduct bond hearings for such applicants for admission, the Supreme Court explained that "nothing in the statutory text imposes any limit on the length of detention … and neither [statutory provision] says anything whatsoever about bond hearings." *Id.* As such, Petitioner's detention while he pursues protection from removal is lawful pursuant to the plain language of the statute and Supreme Court precedent.

Petitioner's reference to being a beneficiary of a pending I-360 Special Immigrant Juvenile petition does not change this outcome. An individual who obtains SIJ status receives several important benefits, but is still subject to arrest, detention, and removal from the United States if a final order of removal is entered against such individual. As USCIS explains, "SIJ classification does not render a noncitizen lawfully present[] [and] does not confer lawful status." USCIS Policy Alert-2022-10, https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf .

9

While Petitioner's I-360 SIJ petition is still pending, multiple courts have explained that SIJ designation does not forestall arrest, detention and removal from the United States if subject to a final order of removal. For example, the U.S. Court of Appeals for the Third Circuit considered, and answered in the affirmative, the question of whether an SIJ recipient is subject to removal on account of his inadmissibility to the United States. *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 432 (3d Cir. 2023). In that case, the individual was charged as inadmissible from the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) which provides that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." While this ground of inadmissibility does not prevent an SIJ designee from applying for adjustment of status, *see* 8 U.S.C. § 1255(h)(2), the court found that it does apply for purposes of *removal*. *Id.* at 433 (emphasis added). The Third Circuit reasoned that "Congress could have rationally decided that SIJS recipients should be given the opportunity to apply for adjustment of status, while also contemplating that they may be removed if their application is denied or for another appropriate basis." *Id.*, n.11.

Similarly, in *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018), the district court held that "an SIJ designation does not strip the U.S. government of all removal powers." Instead, "the government retained the power to arrest, detain, and remove Granados-Alvarado in spite of his SIJ status" because of his inadmissibility to the United States. *Id.* The court explained that "§ 1255(h) does not accord Granados-Alvarado parolee status for any purposes other than for his application for adjustment of status. … It does not make his presence lawful …". *Id.* at 362. *See also Cruz-Gonzalez on behalf of D.M.S.C. v. Kelly*, No. CV 16-5727, 2017 WL 3390234, at *5 (E.D. Pa. Aug. 7, 2017) (Rejecting argument that SIJ

10

approval grants lawful status and prevents removal from the United States and also agreeing with government's argument that being "deemed paroled" under 8 U.S.C. § 1255(h) "does not cancel a final order of removal or an underlying basis of inadmissibility or removability.").

Here, Petitioner's pending I-360 SIJ petition does not provide him with lawful immigration status in the United States and does not bar ICE from arresting and detaining him pursuant to its authority to issue expedited removal orders.[3] For these reasons, his detention is authorized by statute and therefore this Court should decline to order his release.

### 2. Petitioner's Detention is Constitutional.

Petitioner's claim that his detention violates the Fifth Amendment's Due Process Clause is also without merit as the Supreme Court has held that applicants for admission such as Petitioner are only entitled to the protections set forth by statute and that "the Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140. As Petitioner does not allege any deprivation of any of the protections set forth by Section 1225, his due process claim fails.

The Supreme Court has long recognized that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Accordingly, "certain constitutional protections available to persons inside the

---

[3] ICE rescinded prior policy guidance that provided that if an alien had a pending I-360 or a pending adjustment of status application based on I-360 approval, ICE typically exercised favorable discretion by refraining from taking enforcement actions entirely or doing so under limited circumstances. *See* ICE Directive 11005.3, Using a Victim-Centered Approach with Noncitizen Crime Victims (Dec. 2, 2021). This directive was superseded by ICE Policy 11005.4, Interim Guidance on Civil Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits (Jan. 30, 2025). As such, there are no legal nor policy impediments to arrest, detention, and removal of an individual with a pending or even approved I-360 petition.

United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

The Supreme Court has explained that applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Mezei*, 345 U.S. at 212, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination". *Shaughnessy*, 338 U.S. at 543. In *Mezei*, for example, the Supreme Court held that a returning lawful permanent resident's detention at the border without a hearing to effectuate his exclusion from the United States did not violate due process. *Mezei*, 345 U.S. at 206. The Supreme Court held that Mr. Mezei's detention did not "deprive[ ] him of any statutory or constitutional right." *Id.* at 215. Instead, the Court reiterated that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments" that is "largely immune from judicial control." *Id.* at 210. The Court recognized that "once passed through our gates, even illegally," aliens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Id.* at 212. But "an alien on the threshold of initial entry stands on a different footing" than an alien who has effected an entry into the United States. *Id.*

The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who illegally crosses the border—like Petitioner—is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139-40. The *Thuraissigiam* Court explained that "[w]hile aliens who have established connections in this country have due process rights in deportation proceedings, the Court held long ago that

12

Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107.

As explained by the Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country …". *Id.* at 139. The Court held that this same "threshold" rule applies to individuals, like Petitioner, who are apprehended after trying "to enter the country illegally" since by statute, such individuals are also defined as applicants for admission. *Id.* at 139-40. Treating such an individual in a more favorable manner than an individual arriving at a port of entry would "create a perverse incentive to enter at an unlawful rather than a lawful location" and therefore the Supreme Court rejected the argument that an individual who "succeeded in making it 25 years into U.S. territory before he was caught" should be entitled to additional constitutional protections. *Id.* at 140.

All applicants for admission, "even those paroled elsewhere in the country for years pending removal" (*id.* at 139) "have no entitlement to procedural rights other than those afforded by statute." *Id.* at 107. The Court was clear: "the Due Process Clause provides nothing more" than the procedural protections set forth in 8 U.S.C. § 1225 that allow an individual to seek protection from removal if he fears return to his home country and also seek parole from the agency. *Id.* As such, applicants for admission may be detained without a bond hearing pending admission or removal without running afoul of the Constitution.

The First Circuit also held that detention of an alien seeking admission to the United States does not violate due process in *Amanullah*, 811 F.2d at 9. In that case, the Court explained that "the detention of the appellants is entirely incident to their attempted entry into the

13

United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress." *Id.* The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum." *Id.* This Court also recently held similarly. *See Diallo v. Gillen*, No 1:25-CV-11500-JEK, ECF No. 12 (D. Mass. June 13, 2025) (Dismissing habeas petition filed by applicant for admission who failed to demonstrate detention under Section 1225(b) was "in violation of any federal statute or in violation of his Fifth Amendment due process rights.").

Petitioner fails to address the Supreme Court and First Circuit cases that govern this case and foreclose the relief he seeks. In seeking release to remedy an alleged due process violation, Petitioner ignores *Mezei*'s holding, reaffirmed in *Thuraissigiam*, that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." 345 U.S. at 212. Here, Section 1225(b) makes plain that applicants for admission "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removal." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

As the First Circuit has explained, "it is Congress—not the judiciary—that has the responsibility of prescribing a framework for the vindication of those rights." *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 24 (1st Cir. 2007). Explained further by the First Circuit, "[w]hen Congress speaks clearly and formulates a regime that satisfies constitutional imperatives, the courts must follow Congress's lead." *Id.* Here, Congress has established a statutory framework where Petitioner can seek release from detention

through a parole application while pursuing his asylum application before the Immigration Court, but has not authorized bond hearings or any requirement that ICE justify his detention on account of public safety or flight risk, and as such, Petitioner is not entitled to the relief he requests because "an alien in [Petitioner's] position has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140.[4]

District courts within this district and around the country routinely find no due process violation for the detention of individuals subject to 8 U.S.C. § 1225(b). *See e.g.*, *Diallo*, No 1:25-CV-11500-JEK, ECF No. 12 (D. Mass. June 13, 2025) (No statutory or due process violation for individual recently detained under Section 1225(b)); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 145 (D.D.C. 2018) (Explaining that *Mezei* remains "good law, and it dictates that for an alien who has not effected an entry into the United States" the statutory scheme is "due process as far as an alien denied entry is concerned."); *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020) (Finding itself bound to apply *Mezei* in holding that alien's "detention does not violate due process because Congress has authorized mandatory detention for immigrants in [his] circumstances and that is sufficient to satisfy due process."); *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D. N.M. 2020) ("*Mezei* and its progeny do not hold that [p]etitioner has no due-process rights; rather, the applicable statutory process shapes her procedural due process rights. Because [p]etitioner has no statutory right to release or a bond hearing … she has no due-process right to the relief requested."); *Aslanturk v. Hott,* 459 F. Supp.

---

[4] Petitioner, however, can ask ICE to exercise its discretion and parole him from its custody. *See Alexandre v. Decker*, No. 17CIV5706GBDKHP, 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019) (concluding that "the parole procedure, as currently enforced, satisfies due process for arriving aliens because (1) they are differently situated than individuals within our borders, and (2) the period of detention during such a proceeding is not indefinite—it will end upon the conclusion of the removal proceeding.")

3d 681, 694 (E.D. Va. 2020) (Declining to "ignore binding, Supreme Court precedent" to award an applicant for admission a bond hearing since Section 1225(b) does not provide for such hearing.).

Other courts have held similarly, especially after the Supreme Court in *Thuraissigiam* reaffirmed its rule regarding the due process rights of applicants for admission. *See e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 676 (S.D. Tex. 2021) ("When a noncitizen attempts to unlawfully cross the border as [p]etitioner did, his constitutional right to due process does not extend beyond the rights provided by statute."); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 579 (W.D.N.Y. 2021) (Denying habeas petition seeking a release or a bond hearing finding that "he does not have a constitutional right to any additional procedure.").

As such, this Court should apply the "century-old rule" reaffirmed in *Thuraissigiam* and conclude that Petitioner's due process rights are coextensive with the rights provided him under statute.  In § 1225(b) and the INA's related regulatory provisions, Congress has afforded applicants for admission like Petitioner a variety of protections, but excluded the possibility of bond hearings or release from detention other than through DHS's exercise of parole.  Consequently, because Petitioner's statutory rights do not extend to a bond hearing or release as a matter of course, and because his request to seek a Credible Fear interview has been acknowledged, the Court must deny his request for release.

As another session of this Court recently recognized, a brief period of detention for the purpose of removal proceedings or to effectuate removal does not violate the constitution.  *See Dambrosio v. McDonald, Jr.*, No. 25-CV-10782-FDS, 2025 WL 1070058, at *2 (D. Mass. Apr. 9, 2025) (Recognizing that detention "for a period of less than three months' time … does not amount

to an unconstitutional duration.").[5] As Petitioner's detention does not violate the Constitution this Court therefore lacks authority to order Petitioner's release under 28 U.S.C. § 2241(c)(3).

### B.  This Court Lacks Jurisdiction to Review an Expedited Removal Order.

Petitioner does not specifically ask this Court to review the expedited removal order entered against him, but this Court would lack jurisdiction to do so in any event. Congress has provided extremely limited habeas review in individual cases of expedited removal orders and the only issues related to the expedited removal process that are subject to judicial review are not in dispute in this matter.

Title 8, section 1252(a)(2)(A), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)"—including any order of expedited removal or credible fear determination issued under section 1225(b)(1)—"[n]otwithstanding any other provision of law ... no court shall have jurisdiction to review ... except as provided in subsection (e) [i.e., section 1252(e)]," "any individual determination or [any] cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," "a decision ... to invoke the provisions of such section," or "procedures and policies adopted ... to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv). Section 1252(a)(2)(A)(iii) further eliminates jurisdiction—without any exception under

---

[5] Respondents acknowledge that some district courts have determined that further analysis is warranted to determine if an applicant for admission is entitled to a bond hearing under the Constitution once Section 1225's mandatory detention becomes "unreasonably prolonged." *See e.g.*, *Pierre v. Doll*, 350 F. Supp. 3d 327, 331 (M.D. Pa. 2018) (Holding that arriving aliens "have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable."). Here, however, because Petitioner was only recently detained, no claim of unreasonably prolonged detention can be raised and therefore no further analysis as to whether a bond hearing is constitutionally warranted is necessary.

subsection (e)—to review "the application of [section 1225(b)(1)] to individual aliens, including the determination made under section 1225(b)(1)(B)."[6]

Section 1252(a)(2)(A) thus squarely removes from federal courts any jurisdiction to review issues "relating to section 1225(b)(1)," except as "provided in subsection (e)." *Make the Road New York v. Wolf*, 962 F.3d 612, 626 (D.C. Cir. 2020); *see also Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004) (Section 1252(a)(2)(A) bars jurisdiction unless § 1252(e) restores it "to a rather narrow group of questions"). Under Section 1252(e), a district court only may review whether the individual: is an alien; was ordered removed under 8 U.S.C. § 1225(b)(1); and whether the petitioner can prove, by a preponderance of the evidence, that the petitioner is a Lawful Permanent Resident, a refugee, or an asylee and that such status has not been terminated. *See* 8 U.S.C. § 1252(e)(2)(A)-(C); *Thuraissigiam*, 591 U.S. at 111.

Section 1252(e)(5) further commands that in "determining whether an alien has been ordered removed under [8 U.S.C. § 1225(b)(1)] the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." 8 U.S.C. § 1252(e)(5).

In accordance with the above, Petitioner could conceivably only raise three issues in a habeas corpus proceeding before this Court, but these three issues are not areas of dispute in this

---

[6] Congress did, however, permit limited systemic review of challenges to the "validity of the system," defined as whether the expedited removal statute or any implementing regulation is constitutional or whether such statute and regulation is inconsistent with the INA or other statute. 8 U.S.C. § 1252(e)(3)(A). Such challenges must be brought in the U.S. District Court for the District of Columbia. *Id.*

litigation.  Here, Petitioner is an alien, he is not a United States citizen.  Petitioner is subject to an expedited removal order.  And Petitioner is not an asylee, refugee, or a permanent resident.  Accordingly, the Court's review of any other aspect of ICE's issuance of an expedited removal order is foreclosed by 8 U.S.C. 1252(e)(1) which definitively states that "[w]ithout regard to the nature of the action or claim … no court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in [Section 1252(e)(2)]."

Courts within this district and around the country recognize the narrow judicial review available in habeas for expedited removal orders and routinely dismiss petitions challenging the issuance of an expedited removal order.  *See Arandi v. Morgan*, No. 19-cv-12351-RGS, 2020 WL 1891949, at * 1 (D. Mass. Apr. 16, 2020) (Court lacked jurisdiction to review expedited removal order under 8 U.S.C. § 1252(a)(2)(A) and Section 1252(e)); *Khan v. Holder*, 608 F.3d 325, 329-330 (7th Cir. 2010) (collecting cases and joining with "courts that have considered the issue [to] hold that we lack jurisdiction to inquire whether the expedited removal procedure to which the Khans were subjected was properly invoked."); *Castro v. United States Dep't of Homeland Sec.,* 835 F.3d 422, 430 (3d Cir. 2016) ("§ 1252 makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute."); *Khelghatdoost v. Murdock*, No. 3:23-CV-0079-B, 2023 WL 172033, at *2 (N.D. Tex. Jan. 11, 2023) (Finding no jurisdiction over claim from petitioner who argued his expedited removal was improper because such claim "does not fall within the limited jurisdiction afforded the Court on habeas corpus petitions.") *Banci v. Nielson*, 312 F. Supp. 3d 729, 736 (W.D. Tex. 2018) (court has no jurisdiction to review expedited removal order under 8

U.S.C. § 1252(e)).  For these reasons, judicial review of Petitioner's expedited removal order, while not specifically requested in this Petition, would nonetheless be prohibited.

## CONCLUSION

For the foregoing reasons, the Court should deny the Petition as ICE's detention of Petition is lawful pursuant to statute, regulation, and the Constitution and this Court lacks jurisdiction to consider the expedited removal order entered against Petitioner.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: June 20, 2025      By:      /s/ Mark Sauter
Mark Sauter
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3347
Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  June 20, 2025      By:      /s/ Mark Sauter
Mark Sauter
Assistant United States Attorney